## JOHN KING
### v.
## C. H. EDWARDS ET AL.

*Landlord and Tenant—Lease of Coal Lands—Conditions—Forfeiture—Construction.*

Upon suit to recover possession of leased coal lands this court holds: That the words in the lease fixing the date for the payment of the rent, were merely to fix dates for settlement, and did not bind the lessees absolutely to mine coal before those days; that the lessees were not.bound to open the mine by means of a shaft upon the land itself; that it was their right, if they so preferred, to open the mine by means of a shaft and a subterranean drift started upon other land, provided they prosecuted such work with reasonable diligence, and that the trial court properly found that the lessees used reasonable diligence to open the mine.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Peoria County; the Hon. F. M. SHAW, Judge, presiding.

This suit was brought by the appellant before a justice of the peace to recover possession of a hundred and sixty acres of coal land leased to appellees by appellant November 11, 1887.   The Edwards Coal Co. became the assignee of the lease and is party defendant in the suit.   After trial before

King v. Edwards.

the justice the suit was appealed to the Circuit Court. The case was tried in the Circuit Court on appeal by the judge without a jury and resulted in the court finding in favor of appellees and giving judgment against appellant for costs, from which judgment this appeal is taken.

The object of the suit was to establish a forfeiture of the lease, which had been declared by appellant, and the defendants notified of the fact April 14, 1888. The notice declared that appellant had determined to forfeit said lease on account of the failure of appellees to mine coal and mineral, not paying royalty on the same as provided in said lease for the premises described in the notice and held by the lessees, and the lessees were notified to deliver up possession within sixteen days. The following is a copy of the lease:

" This indenture made this 11th day of November, 1887, between John King, party of the first part, and Henry C. Young and Charles H. Edwards, parties of the second part, witnesseth :   That the party of the first part in consideration of the covenants and agreements hereinafter mentioned to be kept and performed by the parties of the second part, their executors, administrators, heirs and assigns, has leased to the said parties of the second part all the coal and minerals underlying the following tract, to wit :   The southwest quarter of section 10, township 9 north, range 6, east of the 4th P. M., Peoria county, Illinois, to have and to hold, to the parties of the second part, from the 11th day of November, 1887, to the 11th day of November, 1897.   And the parties of the second part in consideration of the leasing of the coal and minerals underlying the above described tract of land covenant and agree with the party of the first part to pay the party of the first part as rent for said coal and minerals five cents per ton for all coal and minerals sold from said premises by the parties of the second part, said rent to be paid as follows, to wit :   The first days of January and July of each year after the date of this lease.   It is further agreed by the parties of the second part that at the expiration of the term of this lease they will yield up the premises to the party of the first part without notice.   It is fur-

ther understood and agreed by the parties aforesaid that the parties of the second part shall have the privilege to occupy as much of the surface of the above described premises as is necessary and convenient to erect all necessary machinery for the mining and storing of said minerals, for tramways and switches for transporting the same, for sinking shafts, for drifting or making slopes for said minerals, for air-shafts necessary and convenient for the safety of said mines, and said mines may be opened at any point on said premises by said parties of the second part that in their judgment it will be most convenient to reach said minerals. It is further agreed that the party of the first part shall have privilege of examining the books of record showing the amount of minerals taken from said mines during the term of this lease. The covenants herein shall extend to and be binding upon the heirs, executors and administrators and assigns of the parties to this lease. Witness the hands and seals of the parties aforesaid the day and year above written.

"JOHN KING,          [SEAL.]
"C. H. EDWARDS,      [SEAL.]
"HENRY C. YOUNG.     [SEAL.]"

The following is a stipulation.

"Stipulation read as follows: It is stipulated that the Edwards Coal Co. may and hereby does, enter its appearance (it being a corporation) in the above case as defendant, and it is agreed that the notices served upon C. H. Edwards and H. C. Young shall be taken, and are valid and binding upon said company to the same extent as if said notices had been duly served on this company.

"October 8, 1888.

"EDWARDS COAL COMPANY,
"By W. T. Whiting, attorney.

"H. C. YOUNG,
"C. H. EDWARDS,
    "By their attorney, W. T. Whiting.
"JOHN KING,
    "By Sheen & Lovett, his attorneys.'

It appears that the facts are not much in dispute. Up to the time of the trial the lessor had received no rent under the lease, nor had there been any coal or other mineral taken out of the premises, nor any machinery erected on the surface of the land for the storing of coal or minerals, or switches or tramways for transporting coal or minerals placed on the land, nor were any of the above improvements contemplated being placed on the land by appellees. The appellees had dug a small hole on the land, ten or twelve feet deep, a few weeks after the lease was made. There had been no drifts or slopes sunk on the property for coal or other minerals, or in connection with any mine under the land, nor had any mine been opened on the land described in the lease.

It seems that the land of Daily corners with the King land at the northeast corner, and from the nearest point on the King land to the C. B. & Q. R. R. is two or three rods, and it was necessary for appellees, to reach the railroad for transportation of coal, to cross Daily's land, for which they had no right of way; but he, Daily, testified that he was willing for a reasonable price to grant them the right of way for a tramway across his land to the railroad, but that they would come to no understanding about it with him. After the above lease was executed the appellees leased a tract of land lying east of King's, where there was access to the railroad, and commenced in March after the date of the lease to sink a shaft on Harding's land and run it toward King's land with a view to opening up the mine in that way by a subterranean route from the railroad to the King land.

There was 120 yards of the shaft already finished and there remained 360 yards more to complete to reach the coal on King's land, and the appellees were at work driving the shaft as fast as they reasonably could, part of the time with a double shift of hands by which from three to four yards per day could be driven. It appears from the evidence of the mine boss, John Yates, that the proposed subterranean road to the King land was the most practical route; the nearest because north of the slough (on King's land); there is not any coal on the north, the main body of King's coal lying on the

south part of the land. It would not be a direct route to take the coal over the ground leased by the Edwards Coal Co. to the railroad. It could be taken over their land by a circuitous route following the slough, but it would cause a pretty big expense, larger than the subterranean route. It cost $1.10 per yard to make the entry after the first twenty-five yards and $5 per yard for that. It would cost $200 to sink a shaft on King's land. It would cost $350 to prepare the road bed to receive the track from where the trestle would be to the coal on the King land. The track on the surface would be about the same as the track under ground.

The reason given by Mr. Edwards for not commencing to open the shaft in the winter was that it was much more expensive. But as King wanted them to open up the mine they sent some men over there and they dug a prospect hole fourteen feet deep on the north side of the slough but found nothing but sand, and then, as it would not be practical to hunt coal in a sand bank, they stopped. They thought then it would be a good thing to lease Harding's land close to the railroad, so they leased it for fifteen years. "My intentions in leasing King's land were honest. I expected to work King's coal after leasing Harding's. In planning the work I intended to open an entry leading to the main coal of King's land. I began the work in March and continued as fast as I could, day shifts, until within a few weeks before I went out of the company in July. Young testified it was his endeavor to get to King's coal as soon as possible. There is no object or intention on the part of those interested in the King lease to hold the coal land without mining it. Having the King lease for only ten years it was their interest to take the coal out of his land first. The parties in interest think the way we are doing is the most practicable, the cheapest but not the quickest."

The above are substantially all the facts developed on the trial.

Messrs. SHEEN & LOVETT, for appellant.

In this case a lease was made for the mining of coal,

and semi-annual pay days were expressly agreed upon, and
the lessees had a right to open a mine at any point on said
premises and to use so much of the surface of the land as
was necessary to erect machinery, tramways, switches, shafts,
slopes, air-shafts, etc.   There is here a clearly implied cove-
nant that a mine will be opened, and coal taken out, if it is
there to be taken, and sold if there is a demand for it; and
that it is not to be taken out by the spoonful, but that the
mine will be operated as mines usually are.

An express contract is not necessary upon every detail, but
some covenants are implied from others that are expressed,
when necessary to complete the evident intention of the par-
ties.   Oaks v. Oaks, 16 Ill. 107; see also Luman v. Gage,
37 Ill. 28 ; Walker et al. v. Tucker, 70 Ill. 542; Leavens v.
Cleary, 75 Ill. 352.

Mr. W. T. Whiting, for appellees.

The lease contains no express covenant or agreement as to
how the coal underlying the leased premises should be worked
or that any specified amount of coal should, within a given
time, be mined on the premises; but appellant contends that
he can maintain this action to forfeit the lease, because appel-
lees failed to mine coal on the premises before the time named
in the lease, for the payment of "five cents per ton for all coal
and minerals sold from the premises," upon the ground that the
covenants in the lease require lessees to proceed to mine coal
on the premises before the first days of January or July, after
the date of the lease.   The question whether there are such
covenants in the lease depends, like other questions of the
construction of contracts, upon the intentions of the parties.
No precise words are necessary to constitute a covenant, pro-
vided we are able to collect an agreement by the parties
that a certain thing shall be done, that will be sufficient to
enable us to say that a covenant is created.   But the court
must be satisfied that the language does not merely show
that the parties contemplated that the thing might be
done, but it must amount to a binding agreement upon them
that the thing shall be done.   Smiley v. McLaughlin, 138

Mass. 363; James v. Cochrane, 7 Exch. 170, S. C., 8 Exch. 556.

Where parties have entered into an agreement with express stipulations, the presumption is that they have expressed all the conditions by which they intend to be bound, and courts can not extend their covenants by implication, unless the implication is clear and undoubted. Smiley v. McLaughlin, 138 Mass. 365; Aspin v. Austin, 48 E. C. L. R. (5 Q. B.) 671; Rashleigh v. S. E. Ry., 70 E. C. L. R. (10 C. B.) 612.

The proposition of law submitted by appellant to the trial court, as modified by the court, correctly stated the law governing this cause. The modified proposition is as follows:

"Under the lease offered in evidence, it was the duty of lessees or their assigns therein to sink a shaft, or a slope or drift, upon or near the premises in controversy, within a reasonable time, and to endeavor in good faith in that way to mine coal from said premises, and a failure to use reasonable diligence in so doing would be a default in the terms of said lease."

The law of this case as above stated is sustained by the following authorities: Carl v. The Granger Coal Co., 69 Iowa, 519; Koch's and Ballirt's Appeal, 93 Pa. St. 434–441; Guth's Appeal, 2 Cent. R. 767; Price et al. v. Nicholas, 4 Hughes, U. S. C. Ct. R. 616.

LACEY, J.    There seems to be a wide difference between the counsel for the respective parties as to what is the proper construction of the contract. On the part of counsel for the appellant it is insisted that the proper construction of the contract is that the lessees absolutely bound themselves to pay royalty for the coal on the "first day of January and July for each year" and that the first payment was absolutely due on January following the contract. Hence, that required the mine to be open at least by the first of January following the date of the contract, otherwise no coal could be sold or rent paid. Furthermore that by the terms of the agreement the appellees were bound to mine the coal from a shaft sunk on the land of King and occupy as much of the surface of the

land as necessary for the necessary machinery for the mining and storing of said materials, for tramway and switches for transporting the same, for sinking shafts, for drifting or making slopes for said minerals.

On the other hand counsel for the appellees insist that there was no specified time when the mine should be open except that under all the circumstances it should be opened in a reasonable time. That there was no covenant on the part of the lessees that the mine should be opened on the land of appellant; that to do so was simply a privilege.

After the careful reading of the contract and all its parts we are inclined to adopt the view of the contract entertained by the counsel for appellees.

In our opinion the words contained in said lease, to wit, " To pay the party of the first part as rent for said coal and minerals five cents per ton for all coal and minerals sold from said premises by the parties of the second part, said rent to be paid as follows, to wit: The first days of January and July of each year after the date of this lease," simply mean to fix a day on which settlements for all such sums received for coal, etc., shall be made, and have no purpose to bind the lessees absolutely to mine coal before those days. It was a day fixed for settlement if before those days the lessees under the other terms of the contract had anything in their hands to settle for.

As to appellant's other contention, that the mine was to be opened on his premises, we think him equally at fault. The granting part of the lease which gives the right to mine the coal makes no mention of the manner of mining it or where or how it shall be taken from the land. It simply provides in these words, the party of the first part " has leased to the parties of the second part all the coal and minerals underlying " the premises in question. Then follows in the contract " in consideration of the above " the rent stipulated for it to be paid. Without anything further in the lease it is probable that a covenant on the part of the party of the first part would be implied, giving the lessee the right to occupy so much of the land as was necessary to take the coal from

under the ground, but certainly he would not be compelled to go upon the land at all if he could get the coal without. All that follows in this lease after the granting clause above, is to give the appellees the privilege to open the mine on the land and carrying on the mining from the surface, using so much of the land as necessary for such purpose; but there is no covenant on the part of the lessee agreeing to avail himself of such privilege. The royalty for the coal is the only thing that appellant can be concerned about; when he has received that the lease as to him is satisfied so far as the covenant in question is concerned. There now only remains the question of the matter of fact as to whether or not the appellees were proceeding to open up the coal mine within a reasonable time. The judge in the court below trying the case in place of the jury, by agreement of the parties, found that the appellees were using due diligence in that regard. Unless we can see that the court found manifestly against the weight of the evidence this court has no power to disturb it. After a careful review of the evidence we can not find that it has. We are satisfied that the evidence supports the finding of the court. All the circumstances of the case had to be considered, such as 'the relative cost of the two methods of obtaining the coal, the time required to reach it, the convenience of obtaining and marketing it after it was received, the interests of appellees as well as the appellant in the premises. If a more definite time for the opening of the mine had been desired to be fixed it should have been provided for in the contract. In determining the matter of forfeiture the court below should, and no doubt did, take into consideration the law which holds that forfeitures are not favored, in fact are abhorred, and that a case to justify a forfeiture must be clear. We feel satisfied the court did not err in its finding of the fact in that particular.

It will appear from what has been said in this opinion as to the proper construction of the contract that the court did not err in its refusal and modification of appellant's proposition of law asked to be held. The ruling of the court in that par-

ticular was correct.   We find no error in the record and there-
fore the judgment is affirmed.

*Judgment affirmed.*

C. B. SMITH, J., dissents.   I can not agree with the con-
struction placed upon the contract of leasing by the ma-
jority of the court.    By the construction  placed  upon
the lease of the coal lands by the court, I think the mani-
fest purpose and plainly expressed object of the lease is
defeated.   In the face of the expressed language, that the
lessee shall mine and pay for coal on certain days at a cer-
tain rate, he is relieved from mining coal at all, except as
his convenience at some future time may permit.   Instead of
sinking a shaft on appellant's land, as is clearly contemplated
by the lease, appellee disclaims any purpose to do so at any
time within the life of the lease, but claims the right to mine
coal through a tunnel and shaft under other lands, and after
the coal under other lands has been mined.   The mere argu-
ment of convenience is set up as a bar to the plain require-
ments of this lease.   I know of no rule of law that will justify
that construction to defeat the plainly expressed covenant of
this lease.   I think the judgment ought to be reversed.